☐ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          : Criminal No.: *15 cr 344 (CS)*

     v.                          : Filed:  *6|8|15*

                        :

THOMAS DELANEY,                    Violations:   18 U.S.C. § 1349
                        :                           26 U.S.C. § 7206(1)

       Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INFORMATION

The United States of America, acting through its attorneys, charges:

1.    THOMAS DELANEY ("DELANEY") is hereby made a Defendant on the charges stated below.

### COUNT ONE -- CONSPIRACY
(18 U.S.C. § 1349)

### I. THE RELEVANT PARTIES AND ENTITIES

During the period covered by this Count:

2.    DELANEY resided in Valley Cottage, New York and was the president and the 100 percent owner of Over Rock LLC ("Over Rock").

3.    Over Rock was a New York corporation located initially in Valley Cottage, New York. In approximately September 2010, Over Rock relocated to Bardonia, New York. Over Rock was in the business of providing masonry, landscaping and snow removal services to the New York Power Authority ("NYPA").

4.    NYPA is the largest state public power organization in the United States.  NYPA provides some of the lowest-cost electricity in the nation, operation 16 generating facilities and more than 1,400 circuit-miles of transmission lines.  Its main administrative offices are located at 123 Main Street, White Plains, New York (the "White Plains facility").  NYPA's customer base includes large and small businesses, not-for-profit organizations, public power systems and government agencies.

5.    Over Rock provided masonry, landscaping and snow removal services to NYPA at the White Plains facility.

6.    "CC-1" was a co-conspirator who was a procurement specialist at the White Plains facility.  As a procurement specialist, CC-1 was responsible for, among other things, soliciting vendors to submit sealed bids, conducting bid openings and evaluating bids to determine the lowest qualified bidder.  In this role CC-1 was instrumental in the award of contracts to vendors to perform various services at the White Plains facility, including the award of contracts for masonry, landscaping and snow removal.

7.    "CC-2" was a co-conspirator who provided instructions to DELANEY in the management of Over Rock.  CC-2 was a former NYPA employee who came to know CC-1 during his employment at the White Plains facility.

8.    Various other persons and companies, not made defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

## II. BACKGROUND

9.    NYPA maintains a bidding policy to the effect that (a) at least three bids shall be obtained for all purchases where the value of the contract is valued at or below $25,000, and (b) at least five bids shall be obtained for all purchases where the value of the contract is valued at over $25,000.

10.    NYPA maintains a code of conduct policy which includes a prohibition to the effect that employees will not use or attempt to use their official position to secure unwarranted privileges for themselves, their relatives or any other party, including contracts and employment with NYPA.

## III. DESCRIPTION OF THE OFFENSE

11.    From at least as early as September, 2009 and continuing until at least August, 2012, the exact dates being unknown to the United States, in the Southern District of New York and elsewhere, DELANEY and his co-conspirators, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, to wit, to violate Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349.

12.    It was a part and an object of the conspiracy that DELANEY and his co-conspirators, and others known and unknown, unlawfully, willfully and knowingly, would and did devise and intend to devise a scheme and artifice to defraud NYPA, and to obtain money and property from NYPA by means of false and fraudulent pretenses,

3

representations, and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, would and did transmit and cause to be transmitted in interstate commerce by means of wire communications certain writings, signs, signals and sounds in violation of Title 18, United States Code, Section 1343.

## IV. <u>THE MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT</u>

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

13.      CC-2 and CC-1 developed a close, personal relationship during the time they were both employed at NYPA.  This relationship continued after CC-2 left the employ of NYPA.

14.      In approximately September 2009, CC-2 directed DELANEY to submit a bid in response to a Request for Quote ("RFQ") posted on the New York State Contract Reporter website which solicited competitive bids for an upcoming contract to perform masonry, landscaping and snow removal services at NYPA's White Plains facility.

15.      NYPA's procurement department was responsible for, among other things, the competitive award of contracts to outside vendors, including the contract to perform masonry, landscaping and snow removal services at NYPA's White Plains' facility for which an RFQ was issued in approximately September 2009.  CC-1 was the procurement specialist at the White Plains' facility who was responsible for the evaluation and award of this contract pursuant to NYPA's competitive bidding policy.

16.     On approximately October 6, 2009, DELANEY attended a "walk-thru" of the project site at NYPA. CC-1 was NYPA's representative at the "walk-thru." Sometime prior to the "walk-thru" and before any bid submission or bid opening was conducted, DELANEY was told separately by both CC-1 and CC-2 that Over Rock would be awarded at least two parts of this three-part contract.

17.     CC-2 assisted DELANEY in the preparation and submission of Over Rock's bid. Among other things, CC-2 inserted new bid numbers into the bid after it had been completed by DELANEY. DELANEY submitted Over Rock's sealed bid to NYPA on or about October 13, 2009.

18.     On or about October 29, 2009, CC-1 on behalf of NYPA issued a purchase order awarding all three portions of the contract, masonry, snow removal and landscaping, to Over Rock. The contract was for five (5) years and the award amount was $3 million dollars. The purchase order further indicated that going forward CC-1 would be NYPA's procurement point of contact on this contract.

19.     The terms of the NYPA contract included the requirement that Over Rock pay prevailing wages to its employees. The contract further required that, in order to be paid for the labor provided, Over Rock was required to submit monthly certified payroll statements to NYPA which included the names of the Over Rock employees who performed work at NYPA during that time period, the number of hours they worked and the hourly prevailing rate for each employee.

20.     Shortly after the award of the contract to Over Rock, CC-2 informed DELANEY that since he and CC-1 were responsible for the award of the contract to Over Rock, they also needed to be compensated.

21.     In order to receive proceeds from the contract, CC-2 instructed DELANEY to submit false and fraudulent certified payroll statements and invoices from Over Rock to NYPA which included requests for payment at the prevailing wage rate for individuals who performed no services on behalf of Over Rock at NYPA (the "No Show Employees").

22.     CC-2 provided DELANEY with the names, addresses and social security numbers of the No Show Employees that he should identify on the certified payroll statements Over Rock provided to NYPA.

23.     Between approximately December 2009 and August 2012 Over Rock submitted approximately 195 false and fraudulent invoices to NYPA.

24.     Between approximately December 2009 and May 2011 payment by NYPA to Over Rock on the false and fraudulent certified payroll statements and invoices submitted by Over Rock were made by Checks issued from NYPA's bank account. These checks were cleared through interstate wires. Between approximately June 2011 and August 2012 payment by NYPA to Over Rock on the false and fraudulent certified payroll statements and invoices submitted by Over Rock were made by electronic wire transfers from NYPA's bank account into Over Rock's bank account.

25.     On each occasion after Over Rock received payment from NYPA based upon the false and fraudulent certified payroll statements and invoices it provided, DELANEY caused Over Rock checks made payable to the No Show Employees to be provided to CC-2, who, in-turn, negotiated those checks.

26.     From October 2009 until at least August 2012, the false and fraudulent wages paid to Over Rock by NYPA for the No Show Employees totaled approximately $411,934.

27.     At no time did DELANEY, CC-1 or CC-2 disclose these fraudulent activities and their relationships with one another to NYPA.

## V.  OVERT ACTS

28.     In furtherance of the conspiracy, and to effect the illegal objects thereof, DELANEY and his co-conspirators, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York, and elsewhere:

(a) On numerous occasions, between approximately December 2009 and August 2012, DELANEY, with the assistance of CC-2, submitted false and fraudulent certified payroll statements and invoices to NYPA which substantially overstated the labor costs incurred by Over Rock during the period covered by those certified payroll statements and invoices;

(b) On numerous occasions, between approximately January 2010 and May 2011, Over Rock received payment by check from NYPA based on the false and fraudulent certified payroll statements and invoices it submitted to NYPA;

(c) On numerous occasions, between approximately January 2010 and May 2011, DELANEY and his co-conspirators caused Over Rock to deposit the checks from NYPA referenced in subparagraph (b) above into Over Rock's bank account located in the Southern District of New York, which checks were cleared by an interstate wire communication between financial institutions; and

(d)  On numerous occasions between approximately January 2010 and May 2011, DELANEY, after depositing NYPA's payments into Over Rock's bank account provided, or caused to be provided, to CC-2, from funds in Over Rock's bank account, checks made payable to the No Show Employees of Over Rock.  DELANEY understood that CC-2 would negotiate those check and retain the cash for his, and CC-1's, own personal use.

IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1349.

## COUNT TWO - FALSE SUBSCRIPTION
### (26 U.S.C. § 7206(1))

The United States of America, acting through its attorneys, further charges:

29.    DELANEY is hereby made a defendant on the charge stated below.

30.    Paragraphs 1 through 8, and 11 through 26 of Count One of this Information are repeated, re-alleged, and incorporated in Count Two as if fully set forth in this Count.

31.    On or about June 25, 2012, in the Southern District of New York and elsewhere, DELANEY unlawfully, willfully, and knowingly did make and subscribe to a

U.S. Individual Income Tax Return, Form 1040, for the tax year 2011, which was verified by a written declaration by DELANEY that it was made under penalties of perjury, and which income tax return he did not believe to be true and correct as to every material matter, in that Line 43 reported $115,210 as "taxable income," whereas, he then and there well knew and believed that Line 43 substantially understated his true taxable income, in violation of Title 26, United States Code, Section 7206(1).

IN VIOLATION OF TITLE 26, UNITED STATES CODE, SECTION 7206(1).

Dated: 6/8/2015

_____
WILLIAM J. BAER
Assistant Attorney General

_____
JEFFREY D. MARTINO
Chief, New York Office

_____
BRENT SNYDER
Deputy Assistant Attorney General

_____
STEPHEN J. McCAHEY
Assistant Chief, New York Office

_____
MARVIN N. PRICE, Jr.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
MARY ANNE F. CARNIVAL

_____
HELEN CHRISTODOULOU

_____
PREET BHARARA
United States Attorney
Southern District of New York

_____
STEPHANIE RANEY

_____
MILOSZ GUDZOWSKI
Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, New York 10278
(212) 335-8011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

THOMAS DELANEY,

Defendant.

**INFORMATION**
15 Cr.

**PREET BHARARA**
United States Attorney for *Southern District of New York*
(914) 993-1900

6/8/15  *Information r/ied.*

*Davison, J.*